*In re* CONDEMNATION OF PRIVATE PROPERTY FOR HIGHWAY
PURPOSES

(DEPARTMENT OF TRANSPORATION v CURIS)

Docket No. 184828. Submitted October 8, 1996, at Detroit. Decided January 21, 1997, at 9:00 A.M.

The Department of Transportation brought an action in the Wayne Circuit Court against George Curis, Curis Big Boy, Inc., and others, seeking the condemnation of privately owned realty for highway purposes. The plaintiff had made an offer for the Curis property, which the Curis defendants refused. The court, Marvin R. Stempien, J., ultimately entered a consent judgment under which the Curis defendants received a substantially larger award for their property and granted the Curis defendants' motion for an award of attorney fees set at the maximum allowed under § 16(3) of the Uniform Condemnation Procedures Act, MCL 213.66(3); MSA 8.265(16)(3), one-third of the difference between the plaintiff's initial offer and the final award. The plaintiff appealed the award of attorney fees.

The Court of Appeals *held*:

The trial court did not abuse its discretion in determining the reasonableness of the attorney fees after considering the relevant factors. The award of attorney fees also serves the purposes behind the attorney fee provision of the Uniform Condemnation Procedures Act.

Affirmed.

1. CONDEMNATION — UNIFORM CONDEMNATION PROCEDURES ACT — ATTORNEY FEES.

Factors to be considered by a trial court in determining the reasonableness of an award of attorney fees to a property owner under the Uniform Condemnation Procedures Act include: the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly; the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; the time limitations

imposed by the client or by the circumstances; the nature and length of the professional relationship with the client; the experience, reputation, and ability of the lawyer or lawyers performing the services; and whether the fee is fixed or contingent (MCL 213.66[3]; MSA 8.265[16][3]).

2. CONDEMNATION — UNIFORM CONDEMNATION PROCEDURES ACT — ATTORNEY FEES.

Awarding attorney fees to a property owner under the Uniform Condemnation Procedures Act assures that the property owner receives the full amount of the award, penalizes agents of the condemning agency for deliberately low offers of compensation, and provides a performance incentive to the property owner's attorney (MCL 213.66[3]; MSA 8.265[16][3]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Patrick F. Isom*, Assistant Attorney General, for the plaintiff.

*Ackerman & Ackerman, P.C.* (by *Alan T. Ackerman*) (*Sommers, Schwartz, Silver & Schwartz, P.C.* by *Patrick Burkett*, of Counsel), for the defendants.

Before: WAHLS, P.J., and CAVANAGH and J. F. KOWALSKI*, JJ.

WAHLS, P.J. Plaintiff appeals as of right from the trial court's order awarding attorney fees in this condemnation proceeding. We affirm.

On February 18, 1993, plaintiff filed a complaint against all defendants claiming that it was vested with the power to secure fee simple estates in real property from defendants for the purpose of improving highway I-94 in Wayne County. On the basis of plaintiff's estimated just compensation, it made a good-faith offer of $361,945. Defendants George Curis and Curis Big Boy, Inc. (hereinafter defendants), refused

---

* Circuit judge, sitting on the Court of Appeals by assignment.

this offer. On February 27, 1995, the parties entered into a consent judgment that transferred title of defendants' property to plaintiff in exchange for $1,420,000.

Before the entry of the consent judgment, defendants filed a motion for reimbursement of attorney fees. Defendants requested an award of attorney fees in an amount equal to one-third of the difference between the first written offer of $361,945 and the ultimate award of $1,420,000. Following a bench trial on defendants' motion, the circuit court granted defendants' request, and set forth its reasoning as follows:

> In the case at bar, the Court held an evidentiary hearing at which defendants offered testimony that more than 500 hours of attorney time will have been spent on this case, and that defense counsel put intensive effort into negotiating for the placement of a new building and parking lot for the property owners. The Court finds that given the amount of time defendants' attorney poured into the case, as well as the demand for his services, that the acceptance of this employment precluded other employment. Defendants presented testimony that the common practice in this locality involves the calculation of fees based on the maximum allowed by the UCPA [Uniform Condemnation Procedures Act, MCL 213.51 *et seq.;* MSA 8.265(1) *et seq.*], rather than on an hourly rate. Further, based on a review of recent case law on this subject, it appears that Michigan courts routinely calculate attorney's fees based on the difference between the agency's offer and the amount ultimately awarded; in fact the Court has found no cases in which fees were determined based on an hourly rate. This evidence shows there to be difference of over $1,000,000 between the amount originally offered and the settlement obtained. The circumstances involved in negotiating a rebuilding for the property owners provided a situation where defense counsel was pressured to move as quickly as possible in order to

limit defendants' financial losses in having their business closed. Further, defendants and their attorney have a long-standing relationship in that the case has been on the docket for over two years. It is virtually undisputed that defendants' lawyer is a highly skilled and sought-after condemnation attorney. Finally, the pleadings establish that defendants used a contingency fee agreement whereby the attorney would receive ⅓ of the difference between the first written offer and the final award.

Plaintiff argues that the circuit court abused its discretion by awarding the statutory maximum attorney fee under § 16(3) of the UPCA, MCL 213.66(3); MSA 8.265(16)(3). We disagree.

The UCPA provides for an award of reasonable attorney fees, but not in excess of one-third of the amount by which the ultimate award exceeds the agency's written offer. MCL 213.66(3); MSA 8.265(16)(3); *Detroit v Larned Associates*, 199 Mich App 36, 42-43; 501 NW2d 189 (1993). Where the amount of attorney fees is in dispute, each case must be reviewed in light of its own particular facts. *Detroit v J Cusmano & Son, Inc*, 184 Mich App 507, 514; 459 NW2d 3 (1989). It is the obligation of the property owner to request reimbursement of attorney fees and to provide the court with the necessary evidence to determine whether the requested fees are reasonable. *In re Condemnation of Private Property for Hwy Purposes*, 209 Mich App 336, 341-342; 530 NW2d 183 (1995). The burden of proving the reasonableness of the fee award rests with the party claiming compensation. *Id.* The court is required to make an independent review and determine, on the basis of the record of the case, what constitutes a reasonable attorney fee. *Id.* An award of attorney fees in a condemnation case will be upheld unless the trial court abused its discretion in

determining the reasonableness of the fees. *Jordan v Transnational Motors, Inc,* 212 Mich App 94, 97; 537 NW2d 471 (1995).

The factors to be considered in determining the reasonableness of attorney fees include the following:

> (1) [T]he time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent. [*Condemnation of Private Property, supra,* pp 341-342.]

A court is not to be limited to only these factors. *Jordan, supra,* p 97. Although reasonableness cannot be shown merely by reference to the existence of a contingent fee contract, a contingent fee agreement may be considered by the court in its efforts to determine what constitutes a reasonable fee award. *Condemnation of Private Property, supra,* p 342.

Our review of the record and the factors identified in *Condemnation of Private Property* indicates that the trial court did not abuse its discretion in awarding the maximum statutory attorney fees to defendants. First, Alan Ackerman testified that he spent a total of 330 hours on defendants' case from 1992 through the end of 1994. Ackerman also testified that this number was incomplete because it did not include the amount of time spent during the first month and a half of 1995, a period during which Ackerman completed at

least two legal briefs. In addition, Paul Bringer testified that he spent 131.5 hours of work on defendants' case. Accordingly, the trial court's finding that defense counsel expended over five hundred hours in attorney time was not clearly erroneous. Similarly, the record supports the trial court's finding that defense counsel put "intensive effort" into this case.

Second, Ackerman testified that he has looked at three thousand condemnation cases and handled between twelve hundred and fifteen hundred. Ackerman has handled condemnation cases almost exclusively for the past fifteen years. Given this testimony and the substantial amount of time that Ackerman and Bringer spent on this case, the trial court did not clearly err in finding that the acceptance of this employment precluded other employment.

Third, Davis Berry testified that, as an attorney, he has handled some condemnation cases. Although he normally charges an hourly rate for his services in noncondemnation cases, Berry testified that, in condemnation cases, he charges one-third of the difference between the settlement and the amount of the first good-faith offer. Berry further testified that this is the customary fee of attorneys in the area who practice condemnation law. Ackerman testified that, of the over one thousand condemnation cases that he has handled, every one was handled on a contingency basis. The trial court did not clearly err in finding that it was the common practice in the locality to charge a contingent fee rather than an hourly rate.

Fourth, defense counsel's efforts resulted in a settlement of $1,420,000 where the initial offer was $361,945. This settlement is approximately four times the amount of the initial offer, and exceeded the ini-

tial offer by over $1 million. The trial court's finding regarding this factor was not clearly erroneous. Fifth, Ackerman testified that there was a fear that defendants would lose their work force absent financing of a new building. Accordingly, the trial court did not clearly err in finding that "defense counsel was pressured to move as quickly as possible in order to limit defendants' financial losses." Sixth, the trial court did not clearly err in finding that this case was on its docket for over two years.

Seventh, Berry testified that Ackerman was one of the outstanding condemnation attorneys in Michigan. Ackerman testified that he has served as chairman of the Condemnation Committee of the Michigan Bar Association and as vice chairman of the American Bar Association's Condemnation Litigation Committee. Ackerman has published several articles and edited a book concerning condemnation. Accordingly, the trial court did not clearly err in finding that Ackerman "is a highly skilled and sought-after condemnation attorney." Eighth, the trial court did not clearly err in finding that Ackerman entered into a contingent fee arrangement with defendants in this case.

In addition to the eight factors identified above, this Court has identified three purposes of the attorney fee provision of the UCPA. First, awarding attorney fees will assure that the property owner receives the full amount of the award, placing the owner in as good a position as that occupied before the taking. *Dep't of Transportation v Robinson*, 193 Mich App 638, 645; 484 NW2d 777 (1992). Second, the fee structure penalizes agents of a condemnor for deliberately low offers because a low offer may result in the condemnor paying the owner's litigation expenses as well

as its own. *Flint v Patel*, 198 Mich App 153, 157; 497 NW2d 542 (1993); *Robinson, supra*, p 645. Third, the fee provision provides a performance incentive to the owner's attorney, because the fee awarded is directly proportional to the results achieved by counsel. *Id.*

Here, had the trial court used an hourly rate rather than a contingent fee in determining reasonable attorney fees, defendants would have been placed in a worse position than that which they held before the taking. In addition, such an award would have undermined the statutory purpose of penalizing low offers. Our review of the record indicates that the trial court did not abuse its discretion in holding that an award of one-third of the difference between the first written offer and the ultimate award constituted reasonable attorney fees. *Condemnation of Private Property, supra*, pp 341-342; *Robinson, supra*, p 645.

Affirmed.